AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
08/16/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DVE___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
Aug 16, 2021
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY: _Nancy Boehme_
Deputy Clerk, U.S. District Court

United States of America

v.

JOSE HUMBERTO ORTIZ MEDINA,
Defendant.

Case No. 8:21-mj-00558-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 15, 2021 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Attempted Illegal Reentry into in the United States Following Deportation or Removal |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Special Agent DHS/HSI, Martina Doino
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 16, 2021

**DOUGLAS F. McCORMICK**
Judge's signature

City and state: Santa Ana, California

Hon. Douglas F. McCormick, U.S. Magistrate Judge
Printed name and title

AUSA M. Rabbani  (714) 338-3499

**AFFIDAVIT**

I, Martina Doino, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since December 2019.  I am currently assigned to the HSI Office of the Special Agent in Charge at the Los Angeles International Airport.  I attended the HSI Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC"), in Glynco, Georgia.  At FLETC, I received training in conducting criminal investigations into narcotics smuggling, interdiction, and distribution of controlled substances.

2. I am currently assigned to the Los Angeles Border Enforcement Security Taskforce ("LA BEST") in Los Angeles, California, and have been so assigned since August 2021.  LA BEST is a multi-agency task force aimed at identifying, targeting, and eliminating vulnerabilities to the security of the United States related to the Los Angeles/Long Beach seaport complex, as well as the surrounding transportation and maritime corridors.  My responsibilities include the investigation of violations of federal criminal laws, including crimes involving money

laundering, narcotics trafficking, smuggling, fraud, and immigration violations.

3. Prior to my tenure as an SA, I was a police officer in Key Biscayne, Florida from February 2015 to May 2019. From July 2018 to May 2019, I was a Task Force Officer ("TFO") on a High Intensity Drug Trafficking Area Task Force, where I participated in investigations into money laundering and drug trafficking crimes in South Florida. Throughout my law enforcement career, I have participated in numerous criminal investigations involving narcotics importation or distribution. Through these investigations, I am familiar with the methods and practices of drug users, drug traffickers, and drug manufacturers. I have also spoken at length with other HSI SAs and local law enforcement officers regarding methods of drug trafficking.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against Jose Humberto ORTIZ Medina for a violation of Title 8, United States Code, Section 1326(a), Attempted Illegal Reentry into in the United States Following Deportation or Removal.

5. Because this affidavit is being submitted for the limited purpose of securing the requested criminal complaint, I have not attempted to include each and every fact that may be known to me and other law enforcement personnel concerning this

investigation.  I have set forth only those facts that I believe are necessary to establish probable cause for the requested criminal complaint.  Where statements of others are set forth in this affidavit, they are set forth in substance and in part, unless otherwise indicated.  The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, reports and database queries, and, where noted, my personal knowledge and training and experience.

### III. STATEMENT OF PROBABLE CAUSE

6. Based on my conversations with law enforcement officers, review of reports of investigation, and my own knowledge of this investigation, I know the following:

    A. On Sunday, August 15, 2021, at approximately 4:15 p.m., Orange County Sheriff's Department ("OCSD") made contact with three individuals on a pleasure craft at Dana Point Harbor in Dana Point, California, and determined that they were possibly involved in smuggling activity based upon their statements to officers, as set forth in more detail below.  OCSD advised the Maritime Coordination Center of the incident, and ReCom partners were contacted to provide a federal response to the possible smuggling event.  Response came from, among others, the U.S. Border Patrol ("USBP") and the CBP/Office of Field Operations Special Enforcement Group.

B. OCSD Deputies P.M. and D.D. advised that they were contacted by vessel assist (TowBoat U.S.) who advised they encountered a suspicious vessel at the Dana Point fuel dock (34661 Puerto Place, Dana Point, California 92629). The vessel's motor appeared to have blown out after the arrival at the fuel dock.

C. Two subjects on the vessel, during conversation with TowBoat U.S., said things that did not make sense, including that they had caught fish, but only last week and not that day. TowBoat U.S. contacted OCSD to investigate.

D. Upon arrival, OCSD noticed that the boat was missing parts of its California registration number, and that the boat had fishing rods without fishing line, despite the subjects stating that they had been out fishing. OCSD performed a registration check and then boarded the vessel, where they observed more signs of maritime smuggling, including fuel jugs in the cabin, excess life vests, and Mexican-labeled food, as well as three individuals previously not known to be on board the vessel.

E. OCSD advised that the operator of the vessel was wearing a pink shirt and was attempting to work on the motor intermittently while getting assistance from the other person on deck, who was wearing a white "Hugo Boss" shirt.

F. At approximately 5:00 p.m., the USBP performed an immigration inspection and determined, based on questioning, that all five subjects had unlawfully entered the United States without inspection. The subjects were then taken to San Clemente for processing, and the vessel was seized. LA BEST responded to San Clemente to interview subjects.

G. On August 15, 2021, at approximately 11:14 pm, Border Patrol Agent Intelligence (BPA-I) Dany Mancilla conducted a video-recorded interview of Jose Humberto ORTIZ Medina. BPA-I Roland Nejal witnessed the interview. Both agents were in plain clothes with no weapons visible. The interview was conducted in the Spanish language. ORTIZ understood the interview was being recorded by video and audio.

H. At approximately 11:15 pm, ORTIZ was provided his consulate rights. ORTIZ stated he did not wish to speak to a consulate from his home country.

I. At approximately 11:17 pm, ORTIZ was read his Miranda Rights as per form I-214. ORTIZ acknowledged he understood his rights and agreed to speak with agents without an attorney present.

J. ORTIZ stated that his full name is Jose Humberto ORTIZ Medina and that he has not used any other names. ORTIZ stated that he is a citizen of Mexico and was born on March 24, 1973. ORTIZ said he does not have any legal immigration

documents that allow him to remain in the United States. ORTIZ stated that he had been deported to Mexico in 2010, after a judge ordered him deported. ORTIZ said he did not apply for or request permission to re-enter the United States.

K. ORTIZ claimed he last entered the United States on August 14, 2021, at 9:00 pm. He said he entered the United States by boat. ORTIZ intended to travel to Bakersfield, California. ORTIZ stated he understood it was illegal for him to re-enter the United States after being deported.

L. DHS record checks revealed that ORTIZ had been previously arrested and convicted on August 8, 2016, for re-entry of a deported alien under 8 U.S.C § 1326. ORTIZ was sentenced to 129 days in prison for that conviction.

M. On or about August 8, 2016, ORTIZ was served a Form I-871, Reinstatement of Deportation order, and on August 9, 2016, ORTIZ was removed to Mexico at the Nogales Port of Entry.

### IV. CONCLUSION

7. For the reasons described above, there is probable cause to believe that Jose Humberto ORTIZ-MEDINA has committed a violation of Title 8, United States Code, Section 1326(a),

//

//

Attempted Illegal Reentry into in the United States Following Deportation or Removal.

/s/
MARINA DOINO, Special Agent
Department of Homeland Security

Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone on this 16th day of August, 2021.

**DOUGLAS F. McCORMICK**
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE